2015 IL App (1st) 143151

FIRST DIVISION
August 3, 2015

No. 1-14-3151

| | | |
|---|---|---|
| STEVEN TOUSHIN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| GINA RUGGIERO, | ) | |
| | ) | No. 13 CH 10090 |
| Defendant-Appellant, | ) | |
| | ) | |
| (First Merit Bank, a National Banking | ) | |
| Institution, Trustee Under Trust Numbers | ) | |
| 78-03-2431 and 88-03-5438, | ) | Honorable |
| | ) | Mary L. Mikva, |
| Defendant). | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff, Steven Toushin, brought a declaratory judgment action against defendants, First Merit Bank (First Merit)[1] and Gina Ruggiero (defendant), in which he asked the circuit court to declare that he had a 50% beneficial interest in two Illinois land trusts in which First Merit served as trustee and defendant possessed the remaining beneficial interest.    Plaintiff based his claim on two assignments of beneficial interest, both dated February 16, 1994, in which he claims defendant assigned 50% of the beneficial interest in each trust to him.    First Merit refused to lodge the assignments when plaintiff first presented them in April of 2013, citing the

---

[1] Despite filing an appearance before the circuit court, First Merit Bank did not actively participate in the proceedings and has not participated in this appeal.    We will refer to defendant Gina Ruggiero as defendant and defendant First Merit Bank as First Merit.

age of the assignments and noting that a dispute existed between plaintiff and defendant regarding the validity of the assignments.

¶ 2     After a bench trial, the circuit court found in plaintiff's favor and entered a declaratory judgment finding that plaintiff may lodge, and First Merit shall accept, the assignments of beneficial interest.   Defendant presented numerous affirmative defenses to plaintiff's action, including that the cause of action was barred by the five-year statute of limitation period provided for in section 13-205 of the Illinois Code of Civil Procedure (Code).   735 ILCS 5/13-205 (West 2012).   In rejecting defendant's statute of limitation affirmative defense, the circuit court found that no events adverse to plaintiff's interests occurred until he attempted to lodge the assignments of beneficial interest in April of 2013, well within the five-year limitation period of section 13-205.

¶ 3     Defendant raises the following issues for our review: (1) whether the circuit court erred in entering a declaratory judgment against her; (2) whether plaintiff's claims are time-barred pursuant to section 13-205 of the Code (*Id.*); (3) whether plaintiff's claims are barred by the doctrine of *res judicata*; (4) whether the circuit court should have dismissed plaintiff's claim pursuant to the doctrine of collateral estoppel; (5) whether the circuit court failed to apply the doctrine of judicial estoppel; (6) whether plaintiff's evidence of a prior adjudication defeats his claim; (7) whether the circuit court erred in denying defendant's motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2012)); and (8) whether the circuit court erred when it denied defendant's motion for summary judgment.   Due to our conclusion in this matter, however, we only need to address defendant's contention that plaintiff's claim is time-barred pursuant to the statute of limitations period provided for in section 13-205 of the Code.   735 ILCS 5/13-205 (West 2012).   Accordingly, we hold plaintiff's cause of action in

this case is time-barred because the evidence at trial showed that plaintiff knew, or at the very least should have known, of the existence of his injuries outside of the five-year limitation period provided for in section 13-205 of the Code.

¶ 4                                         JURISDICTION

¶ 5      On October 14, 2014, the circuit court entered a declaratory judgment in plaintiff's favor. The court reserved ruling on defendant's counterclaims, and, regarding its entry of a declaratory judgment, found "no just reason for delaying either enforcement or appeal or both" pursuant to Illinois Supreme Court Rule 304(a).  (eff. Feb. 26, 2010) (allowing this court to review judgments as to fewer than all of the claims or parties when such a finding is made by the circuit court).  On October 15, 2014, defendant timely appealed.  Accordingly, we have jurisdiction pursuant to Illinois Supreme Court Rule 304(a).  *Id.*

¶ 6                                         BACKGROUND

¶ 7      On April 15, 2013, plaintiff filed a verified complaint against defendants.  Relevant to this appeal, plaintiff asked for declaratory relief based on two assignments of beneficial interest he possessed that he alleged assigned him 50% of the beneficial interest in two Illinois land trusts that held title to property commonly known as 1349 and 1365 North Wells Street in Chicago, Illinois.  First Merit, as trustee, held title to the properties in the trusts as follows: in trust number 78-03-2431, created March 16, 1978, it held title to 1349 North Wells Street; and in trust number 88-03-5438, created March 5, 1988, it held title to 1365 North Wells Street.  Plaintiff alleged that defendant acquired 100% of the beneficial interest to the trusts in 1978 and 1988 "by virtue of the [p]laintiff providing her and her husband, Angelo Ruggiero, with ownership of said beneficial interests, in a fiduciary capacity since the [p]laintiff, for reasons well known to the individual [d]efendant, were not intended to be made permanent."  Plaintiff alleged that Angelo

Ruggiero, in turn, transferred his interest in the trusts to defendant, Angelo's wife. Plaintiff alleged that the transfer documents, as well as the trust documents creating the trusts, were lost or misplaced.

¶ 8     In his complaint, plaintiff further alleged that "[f]rom their inception, [he] paid all the expenses in connection with the properties held in the said [t]rusts, including the debt service on the mortgage, real estate taxes, insurance and maintenance and/or improvements to the property." Plaintiff and defendant own the Festival Theater Corporation which operates the Bijou Theater. Plaintiff alleged defendant later assigned him 50% of the beneficial interest in the trusts as consideration for plaintiff's expenditures, maintenance, and expenses related to the properties. Plaintiff alleged that "[f]or reasons best known to the individual parties *** the [a]ssignments were not submitted to the [t]rustee for acceptance until April 1, 2013." On that date, plaintiff's attorney sent the assignments to First Merit for acceptance, which First Merit declined to honor on April 5, 2013. Plaintiff alleged that "[o]n information and belief *** [defendant] has found a prospective purchaser for the properties held in said [t]rusts; that she intends to convey the property to said purchaser without disclosing or recognizing the [his] interest in said properties." Accordingly, plaintiff asked that the circuit court enter a declaratory judgment pursuant to section 2-701 of the Code (735 ILCS 5/2-701 (West 2012)) declaring the February 16, 1994, assignments giving him a 50% beneficial interest in both trusts are valid, have full force and effect, and were made with adequate consideration. Plaintiff asked that the circuit court direct and order First Merit to recognize his interest, as well as for damages "as the Court may deem appropriate."

¶ 9     In support of his complaint, plaintiff attached the two assignments, a letter from his attorney to First Merit, and a letter in response from First Merit. The letter from plaintiff's

attorney indicates that plaintiff attempted to lodge the assignments with First Merit on April 1, 2013. First Merit, however, refused to accept the assignments, stating the assignments "bear a date from nearly 20 years ago and are the subject of a heated dispute between the original beneficiary and your client." First Merit did indicate, however, that it would accept the assignments "[u]pon provision of a court order resolving the legitimacy of the assignment or consent from the current beneficiary."

¶ 10 The single page assignments of beneficial interest are both dated February 16, 1994, and with the exception of the name of the individual trust involved, are nearly identical. Specifically, the first assignment provides as follow:

"For value received I hereby sell, assign, transfer and set over unto [plaintiff] Fifty (50%) per cent [of] my rights, powers, privileges and beneficial interest in and under that certain trust agreement dated the 5th day of March *** 1988, and known as the The Midwest Trust Services, Inc. Trust Number 88-03-5438, including all interest of the undersigned in the property held subject to said trust agreement.

The power of direction under this trust hereafter shall be exercised by [plaintiff], [defendant]."

¶ 11 The second assignment is nearly identical to the first, except for that the trust listed is "Trust Number 78-03-2431" and is from March 16, 1978. Defendant signed the assignments, and plaintiff signed under a section titled "Acceptance." On both assignments, the section titled "Trustee's Receipt" is blank.

¶ 12 On September 27, 2013, defendant filed a motion to strike and dismiss plaintiff's complaint pursuant to section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2012).

Relevant here, defendant sought dismissal of plaintiff's declaratory judgment action pursuant to the five-year statute of limitations period provided for in section 13-205 of the Code. 735 ILCS 5/13-205 (West 2012). On January 16, 2014, the circuit court denied defendant's motion to dismiss plaintiff's claim for declaratory relief.

¶ 13 Defendant filed a four-count counterclaim, seeking that her own declaratory judgment be entered regarding her claim to possess 100% of the beneficial interest in both trusts. Defendant also alleged slander of title, sought an action for possession, and asked the circuit court to order an accounting be performed.

¶ 14 On March 7, 2013, defendant filed an answer to the complaint. Relevant here, she argued, as an affirmative defense, that plaintiff's claim was time-barred pursuant to section 13-205 of the Code. *Id.*

¶ 15 On May 23, 2014, defendant filed a motion for summary judgment and a motion to appoint a receiver. On July 3, 2014, the circuit court denied defendant's motion for summary judgment and ordered that the motion for an appointment of a receiver be taken with the case.

¶ 16                                         Trial

¶ 17 At trial, plaintiff testified on his own behalf and called defendant, defendant's husband Angelo Ruggiero, and Roseann Dupass, the vice president and trust officer at First Merit, as witnesses.

¶ 18 Plaintiff testified that he gained ownership of the property at 1349 North Wells street as a result of litigation against his business partners in the late 1970s. Angelo Ruggiero, defendant's husband and a licensed attorney, represented plaintiff in the litigation. In 1983, plaintiff received 11 subpoenas from the Internal Revenue Service. Angelo advised plaintiff that it would be in his best interest to transfer some of his interest in the property located at 1349 North

Wells Street to him. Angelo told plaintiff that in order to protect the property from the imposition of a tax lien; he should transfer 50% of his beneficial interest in the land trust holding title to 1349 North Wells Street. Accordingly, plaintiff assigned 50% of the beneficial interest in the land trust holding title to 1349 North Wells Street to Angelo. Plaintiff successfully entered into evidence an assignment dated April 4, 1983, which assigned a 50% interest in trust 78-03-2431 to Angelo.

¶ 19 Plaintiff testified that in January or February of 1984, Angelo told him that as his partner in Festival Theatre Corporation, he would purchase the property located at 1365 North Wells Street on his behalf because plaintiff could not obtain a mortgage. Plaintiff explained that "Angelo said, you can't get a mortgage. I could help with you *** later on. I'll purchase the building. It's your building. I'll purchase it. That's exactly what transpired." Angelo purchased the building around April 1, 1984.

¶ 20 Plaintiff testified he moved his business into 1365 North Wells Street, where he has remained since that time. Plaintiff testified that he and Angelo prepared leases for the property, which "were drawn up for the bank's purposes because they held the mortgage and then they were - moneys that paid the mortgages came through me." Specifically, they came "[t]hrough the payments of corporation, tenants of the building."

¶ 21 Regarding the assignments at issue here, plaintiff testified that on February 16, 1994, he spoke with defendant and Angelo in the kitchen of their home at around eight at night. According to plaintiff, defendant handed him the assignments, and he observed defendant sign the assignments. The assignments, however, were not dated, did not indicate the power of direction, did not acknowledge the collateral assignee, or include his name, address, or social security number. In 2013, plaintiff added the above information to the assignment, including

the language indicated that he and defendant possessed the power of direction. Plaintiff explained that when he went to lodge the assignments in 2013, the trustee, First Merit, refused to accept them.

¶ 22     Plaintiff testified that Angelo represented him in numerous legal matters, including tax disputes.   He denied owing Angelo fees for his legal work.   Plaintiff pled guilty to various tax charges, and was incarcerated for a period of 18 months.   Plaintiff also lost a civil tax case in the 1990s, in which Angelo was involved in his representation, and was assessed a penalty of "7 or $800,000."   The government never collected and did not try to levy his assets.   Plaintiff testified that in 1988, he faced a potential 45-year prison term when Angelo advised him that he should transfer the remaining 50% beneficial interest in the land trust holding title to 1349 North Wells Street to him.   Plaintiff explained that Angelo told him "if you don't get out of this alive, if you don't get out of this, you have lost everything.   If you turn the remaining 50% over to me of what you owe, depending on the conviction, you get convicted, I could sell the assets and I could set something up for your children."   Plaintiff agreed to Angelo's arrangement to transfer the remaining 50% of his interest in 1349 North Wells Street to Angelo for legal fees.   Angelo then drew up documents giving plaintiff back the property with defendant's signature on it.   By 1988, he had given up 100% of the beneficial interest in 1349 North Wells.   Plaintiff was also a party to two divorce proceedings.   Plaintiff explained that, based on Angelo's advice, he testified during the divorce proceedings that he did not have an interest in either trust.

¶ 23     Plaintiff testified that he "sat down in 2006 with Angelo and just said here's money that is owed us, what have you been doing for the building.   Here are all these loans that have been going on.   Number one, I realized I was not in a good situation.   I hadn't filed the [assignments of beneficial interest]."   Plaintiff testified that he had other assignments from defendant giving

him 100% of the beneficial interest in the trusts, but, as a compromise, he was only going forward on the 1994 assignments giving him a 50% beneficial interest in the trusts.

¶ 24    In 2013, plaintiff had a series of meetings with Angelo and defendant regarding selling the property.   He also had meetings with defendant's children who "indicated to me that the paper that the [assignments of beneficial interest] was written on was not worth a penny, had no value whatsoever."   The children, however, did not deny the existence of the assignments or indicate that the signatures were not legitimate.

¶ 25    On cross-examination, defense counsel asked plaintiff if he remembered being sued in a 2000 mortgage foreclosure matter, No. 2000 CH 07074, concerning both trusts, to which he first responded "I didn't get sued."   He later stated that he did not remember being sued.   When shown a document showing that a summons was returned with his name on it, plaintiff answered, "If it says I got it, I got it."   When shown that the return of service was filed on June 2, 2000, plaintiff responded, "[t]hen I received it then."   When asked "[w]ould you agree with me that if that case were not successfully resolved, that you and your companies could have lost your interest in the property?" to which he responded, "[e]veryone would have lost their properties, yes."

¶ 26    Defendant successfully entered into evidence both the mortgage foreclosure summons and the mortgage foreclosure complaint.   The summons, dated May 9, 2000, lists plaintiff as a defendant.   The mortgage foreclosure complaint indicated that it was filed on May 9, 2000, against the following defendants: Angelo Ruggiero; defendant; Midwest Bank and Trust Company, as Trustee under Trust Agreement dated March 16, 1978 and known as Trust No. 78-032431; Midwest Bank and Trust Company, as Trustee under Trust Agreement dated March 5, 1988, and known as Trust No. 88-03-5438; plaintiff; Festival Theatre Corp.; Images of the

World, Ltd.; unknown owners and non-record claimants. The mortgages and the notes are attached to the complaint, and are dated June 22, 1999. The amount of original indebtedness secured by each mortgage is listed as $725,000. The complaint lists the trusts as mortgagors but Angelo and defendant as personally liable for a deficiency because they signed the notes securing the mortgages. The mortgages were signed by the trustee.

¶ 27 Plaintiff also admitted that "between 2004, 2005" he learned about a new mortgage taken out by defendant in 2003. He was "[a]nnoyed" by the mortgage. He explained, "I expressed to them that I was annoyed. If you're going to take out a loan, why don't you come to me, why don't you talk to me. Restructure it differently, instead of putting everything on mortgages and keep paying a large sum of money over a long period of time. It's much easier way to pay back loans than do that."

¶ 28 On redirect examination, plaintiff's counsel brought up the foreclosure action in the following exchange:

"Q. what happened to the foreclosure action which is defense exhibit Number 30?

A. I don't know because I wasn't involved in that. I must have received it. I was not brought into the case.

After - when I looked at the document, my questioning was at a certain point in time that the money was put into the account, so I have no idea what happened to the money from that account or whether there should be a foreclosure at that point in time."

Q. Were the properties foreclosed upon?

A. No, they were not."

¶ 29 Defendant testified that plaintiff had been to her home five or six times and that he went to her daughter's wedding. When asked whether the signatures on the February 16, 1994, assignments were hers, she responded "I don't know. It looks like my signature, but, again, I don't know." Defendant could not remember if plaintiff came to her home on February 16, 1994. She denied assigning any interest in the trusts to plaintiff, stating they were gifts from her husband that she would never give to plaintiff. On cross-examination, she testified she is not actively involved in the management of the buildings and Angelo did not tell her about his clients. She both denied that the alleged February 16, 1994, meeting occurred and testified that she could not remember if plaintiff came to her home on that date.

¶ 30 Roseann Dupass testified she worked at First Merit. In 2013, plaintiff presented her with an assignment. The assignment, however, had "nothing filled in other than [plaintiff's] signature." She informed plaintiff that all parties had to sign the document. Plaintiff later brought her a signed assignment, but defendant's family had informed her that they disputed the assignments. She testified that the blank assignment had defendant's signature on it.

¶ 31 Angelo Ruggiero, defendant's husband, testified that he represented plaintiff, who he described as both a friend and a client, in a 1975 dispute. As a result of a settlement, plaintiff received the real estate commonly known as 1349 Wells Street, $150,000 worth of film, and a property in Indianapolis. Angelo placed the real estate at 1349 Wells Street in a land trust with plaintiff owning 100% of the beneficial interest. Angelo denied meeting with plaintiff on February 16, 1994. Subsequently, plaintiff assigned him half of the beneficial interest in the property at 1349 Wells Street, half of the Indianapolis property, and half of $150,000 worth of film. Angelo testified he bought the property located at 1365 North Wells Street himself. Angelo testified that as a tenant, plaintiff's lease provided that he pay all mortgages, taxes, and

maintenance.   Angelo denied that he ever advised plaintiff to conceal his ownership interest in the trusts.   Angelo admitted that 10 years prior to trial, he had been suspended from the practice of law for one year.

¶ 32     At the close of evidence, defendant moved for judgment as a matter of law.   Relevant here, defendant argued that plaintiff's claim was barred by the statute of limitations.   The court denied the motion, finding the statute of limitations did not run until First Merit refused to lodge the assignments.

¶ 33     Defendant presented testimony from plaintiff, and her son Michael Ruggiero.   During defendant's case, plaintiff testified that he never tried to lodge the 1994 assignments at issue "[b]ecause [he] never thought of it."   He later testified both that he never thought "it was necessary," and that he had an agreement with defendant and her husband.   Regarding the foreclosure action, plaintiff testified that "I got served with something, and then it went back to Angelo, and he took care of it.   No money was paid into those mortgages. What he did with the money I don't know."   He explained that "the Ruggieros *** were taking care of the problem." In response to questioning from the court, plaintiff admitted that he knew about the mortgages and he knew that he did not sign the mortgages.   When the court asked if "the Ruggieros ha[d] your permission to take out the mortgages," plaintiff answered, "[n]ot to refinance them, no." He clarified that he and Angelo took out the original mortgage.   Regarding the refinancing, he testified he "was not privy to any information until 2004."   He later testified that he did not file his 1994 assignments because "I didn't feel I had to.   I had it.   I felt comfortable with it.   I didn't file it until I felt threatened, and that was now."

¶ 34     Michael Ruggiero testified he met with plaintiff who showed him blank assignment forms.

¶ 35   The circuit court found plaintiff to be a more credible witness than defendant and her husband as to what occurred with the assignments of beneficial interest.   Specifically, plaintiff's testimony "matched better" with his documented divorce and tax litigation than the defendant's claims regarding legal fees.   The circuit court found defendant to be incredible.   The court found that it was her signature on the assignments, and noted that she did not dispute the validity of her signature.   Regarding the statute of limitations defense, the court found that it did "not think that anything adverse to [plaintiff's] purported interest occurred until he tried to lodge the assignments, the trustee refused and the Ruggieros apparently instructed the trustee not to accept the assignments."

¶ 36   On October 14, 2014, the circuit court entered its judgment order finding in favor of plaintiff and against defendant and First Merit.   The court entered a declaratory judgment finding that plaintiff may lodge the assignments of beneficial interest dated February 16, 1994, and that First Merit shall permit the lodging.   Pursuant to Illinois Supreme Court Rule 304(a), the court found no just reason to delay enforcement or appeal of its declaratory judgment.

¶ 37                                                ANALYSIS

¶ 38   Defendant argues that plaintiff's claim for declaratory relief is barred by section 13-205 of the Code (735 ILCS 5/13-205 (West 2012)) because plaintiff knew, or should of known, of his claim more than five years before he filed the present action in April of 2013.   According to defendant, plaintiff's cause of action can be characterized as either an action regarding personal property or "civil actions not otherwise provided for" under section 13-205 of the Code.   *Id.* Defendant points to the following facts in the record in support of her argument: plaintiff was a defendant in a 2000 mortgage foreclosure action; plaintiff testified he learned in 2004 that defendant placed a mortgage on the property; and plaintiff met with defendant's husband in 2006

in attempt to reconcile the parties' disagreement over the ownership of the property. Accordingly, defendant argues that the five-year limitation period of section 13-205 of the Code bars plaintiff's cause of action for declaratory relief.   *Id.*

¶ 39   In response, plaintiff argues that any statute of limitation here could only begin to run against him when he attempted to lodge the assignments of beneficial interest in the trusts with the trustee in 2013, a time within the statute of limitations.   Plaintiff disputes the relevance of the 2000 mortgage foreclosure proceeding against him, arguing that no harm fell upon him, he was only named in the proceedings because he resided at the property, and the mortgages at issue were subsequently reinstated.   Plaintiff stresses that defendant failed to cite any authority that would require him to lodge his assignments of beneficial interest within a certain time frame. In distinguishing authority relied upon by defendant, plaintiff maintains that "[t]he case at bar involved neither tort issues [n]or breach of contract issues."

¶ 40   An Illinois land trust is a "unique" type of trust "created by the Illinois bar, with the aid and acceptance of the Illinois bench, in the nineteenth and early twentieth centuries."   *Stable Investments Partnership v. Vilsack*, 775 F.3d 910, 912 (7th Cir. 2015).   Land trust agreements are widely used in real estate transactions and allow for both secrecy of ownership and ease of transferability.   *People v. Chicago Title & Trust Co.*, 75 Ill. 2d 479, 488 (1979).   Under such an agreement, the true ownership of the land in question remains with the beneficiary despite the trustee holding both legal and equitable title.   *Podvinec v. Popov*, 168 Ill. 2d 130, 137 (1995). A trustee of an Illinois land trust acts only as a representative of the beneficiary, and only when directed to do so by the beneficiary, for the beneficiary's benefit.   *Id.*   Therefore, "[o]utside of relationships based on legal title, the trustee's title has little significance."   *Id.*

¶ 41    It is well-established that a beneficiary of an Illinois land trust possesses an interest in personal, not real property.    *In re Estate of Alpert*, 95 Ill. 2d 377, 382 (1983).    Therefore, "[a]n assignment of a beneficial interest does not give the assignee a direct interest in the realty *res* of the trust."    *Id.*    Outside of holding title, however, the beneficiary exercises and manages all rights of ownership.    *23-25 Building Partnership v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 755 (2008).    Specifically, "[t]he 'owner of a beneficial interest in a land trust is accorded four basic powers: (1) to possess, manage and physically control the real estate; (2) to receive all income generated by the property; (3) to direct the trustee in dealing with title to the real estate; and (4) to receive the proceeds of any sale of the property made pursuant to the power of direction.' "    *LaSalle National Bank v. 53rd-Ellis Currency Exchange, Inc.*, 249 Ill. App. 3d 415, 429-430 (1993) (quoting *Patrick v. Village Management*, 129 Ill. App. 3d 936, 939 (1984)).

¶ 42    Statutes of limitation "discourage the presentation of stale claims and *** encourage diligence in the bringing of actions."    *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 265-66 (2001).    They "represent society's recognition that predictability and finality are desirable, indeed indispensible, elements of the orderly administration of justice."    *Id.* at 266. A defendant, therefore, may invoke a particular statute of limitations as an affirmative defense to a cause of action.    *John Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 413 (2009).    The appropriate statute of limitations to apply to a cause of action "is determined by the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises."    *Id.*    Stated differently, the nature of the liability determines the appropriate statute of limitations. *Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 469 (2008).    Accordingly, we must "look behind the allegations in a complaint to discover the true character of plaintiffs' cause of action."    *Armstrong v. Guigler*, 174 Ill. 2d 281, 290 (1996).    Therefore, type of injury,

and not the pleader's designation of the nature of the action, controls our determination. *Id.* at 286.

¶ 43 Illinois courts "have held that a statute of limitation begins to run when the party to be barred has the right to invoke the aid of the court to enforce his remedy." *Sundance Homes, Inc.*, 195 Ill. 2d at 266. "Stated another way, a limitation period begins 'when facts exist which authorize one party to maintain an action against another.' " *Id.* (quoting *Davis v. Munie*, 235 Ill. 620, 622 (1908)). Under the discovery rule, however, the commencement of the applicable statute of limitations is delayed " 'until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused.' " *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77 (1995) (quoting *Jackson Jordan, Inc. v. Leydig Voit & Mayer*, 158 Ill. 2d 240, 249 (1994). When a plaintiff knows, or should know, such information, "the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed." (Internal quotation marks omitted.) *Id.* at 86. The discovery rule developed in order to avoid harsh results due to the literal application of statutes of limitation. *Id.* at 77. Whether a statute of limitations applies to a cause of action is a legal question subject to *de novo* review. *Travelers Casualty & Surety Co.*, 229 Ill. 2d at 466.

¶ 44 In this matter, plaintiff filed a declaratory judgment action pursuant to section 2-701 of the Code, which allows the circuit court to, "in cases of actual controversy, make binding declarations of rights, having the force of final judgments." 735 ILCS 5/2-701 (West 2012). "The essential requirements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Beahringer v. Page*, 204 Ill. 2d 363, 372 (2003). Section 2-701 "is strictly remedial" and "does not create substantive rights or duties,

but merely affords a new, additional, and cumulative procedural method for the judicial determination of the parties' rights." *Id.* at 373. Its purpose "is to allow the court to address a controversy one step sooner than normal after a dispute has arisen, but before the parties take steps that would give rise to a claim for damages or other relief." *Universal Underwriters Insurance Co. v. Judge & James, Ltd.*, 372 Ill. App. 3d 372, 379 (2007). Plaintiff, therefore, alleged that defendants' failure to recognize his interest in the trusts "causes [him] irreparable damage." Accordingly, he asked the circuit court to declare that the February 16, 1994, assignments giving him a 50% beneficial interest in each trust "are valid, are in full force and effect and were made for a full and adequate consideration." He further asked the court to order First Merit to recognize his interest and for damages "as the Court may deem appropriate."

¶ 45 In response, defendant invoked section 13-205 of the Code as an affirmative defense to plaintiff's declaratory judgment action. 735 ILCS 5/13-205 (West 2012). Section 13-205 provides, in relevant part, that "actions on unwritten contracts, expressed or implied, or on awards of arbitration, *or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for*, shall be commenced within 5 years next after the cause of action accrued." (Emphasis added.) *Id.* Specifically, defendant argued that plaintiff's action is barred because it is an action for personal property and because it is a civil action "not otherwise provided for" as stated in section 13-205. *Id.*

¶ 46 Initially, we hold that section 13-205 of the Code is the appropriate statute of limitations to apply in this matter based on the nature of plaintiff's alleged injury in this case. The nature of plaintiff's alleged injury is that defendant's actions prevented him from receiving the benefits of owning a percentage of the beneficial interests in the land trusts at issue here. As a

beneficiary of the land trusts, plaintiff would be entitled to: " '(1) to possess, manage and physically control the real estate; (2) to receive all income generated by the property; (3) to direct the trustee in dealing with title to the real estate; and (4) to receive the proceeds of any sale of the property made pursuant to the power of direction.' " *LaSalle National Bank.*, 249 Ill. App. 3d at 429-30 (quoting *Patrick,* 129 Ill. App. 3d at 939). Furthermore, plaintiff's beneficial interest is personal property. *In re Estate of Alpert*, 95 Ill. 2d at 382. The evidence in the record shows that defendant and her husband directed the trustee to enter into mortgage agreements, and later, they attempted to sell the property. These actions infringe upon plaintiff's personal property rights as an owner of 50% of the beneficial interest in the trusts because plaintiff's ownership rights would allow him to share the power of direction with defendant in determining how to direct the trustee actions regarding the mortgage agreements and potential sale of the properties. Furthermore, the end result of both actions would be that plaintiff, as a beneficiary, would be entitled to a percentage of either the mortgage proceeds or the proceeds of sale. Section 13-205 of the Code provides for a five-year statute of limitations in "actions *** to recover damages for injury done to property, real or personal, or to recover possession of personal property or damages for the detention or conversion thereof." 735 ILCS 5/13-205 (West 2012). Accordingly, we hold that section 13-205 of the Code is the appropriate statute of limitations to apply here based on the nature of plaintiff's alleged injury.

¶ 47 Applying section 13-205 of the Code to the evidence presented at trial, we hold that plaintiff's claim for declaratory relief is barred because he knew, or at the very least should have known, of the existence of his cause of action outside of the five-year limitation period. *Id.* According to the assignments of beneficial interest possessed by plaintiff, he had a 50% beneficial interest in both trusts, with a shared power of direction with defendant, since February

16, 1994. He filed his complaint for declaratory relief in this matter in April of 2013. The evidence at trial showed that in 2000, plaintiff was served as a defendant in a mortgage foreclosure action based on mortgages entered into by the trustee with promissory notes signed by defendant and her husband. Although plaintiff's testimony regarding the foreclosure suit was initially evasive, he later admitted that he "got served with something." The foreclosure suit threatened his ownership interest and put him on notice that defendant had directed the trustee to enter into mortgages secured by the properties held in the trusts. Absent from the record is any indication that plaintiff received any of the proceeds from the mortgages, despite his ownership interest in the proceeds of the trust. Furthermore, it shows that plaintiff could easily have filed his present declaratory action in 2000 in order to secure his share of any potential proceeds from the impending foreclosure sale.

¶ 48    Regardless of the 2000 foreclosure suit, plaintiff provided further testimony showing that he knew, or should have known, that his ownership interest in the land trusts were threatened by defendant's actions outside of the five-year limitation period of section 13-205 of the Code. *Id.* First, plaintiff testified that "between 2004, 2005" he learned about a new mortgage taken out by defendant in 2003. This "[a]nnoyed" him. He testified that "I expressed to them that I was annoyed. If you're going to take out a loan, why don't you come to me, why don't you talk to me. Restructure it differently, instead of putting everything on mortgages and keep paying a large sum of money over a long period of time. It's much easier way to pay back loans than do that." As plaintiff's testimony shows, defendant's actions in taking out a mortgage in 2003 infringed upon his ownership rights because plaintiff, as owner of 50% of the beneficial interest in both trusts, had 50% of the power to direct the trustee to enter into the 2003 mortgage and had the right to a portion of the proceeds of the mortgage. Most importantly for our purposes here,

plaintiff knew of this information in a time period outside of the five-year statute of limitations provided for in section 13-205 of the Code. *Id.*

¶ 49    Additionally, defendant testified at trial that in 2006, he met with defendant's husband regarding the property.   Plaintiff explained that he "sat down in 2006 with Angelo and just said here's money that is owed us, what have you been doing for the building.   Here are all these loans that have been going on.   Number one, I realized I was not in a good situation.   I hadn't filed the [assignments of beneficial interest]."   Accordingly, the above testimony shows that plaintiff knew as early as 2006, another time period outside of the five-year limitation period provided for in section 13-205 of the Code, that he "was not in a good situation" because he had not lodged the assignments of beneficial interest.   Plaintiff's testimony regarding the time period of 2004 to 2006 show that he knew, or should have known of his injury and its cause. Therefore, he had an obligation of inquiring further into the situation.   See *Hermitage Corp.*, 166 Ill. 2d at 86 ("We hold, therefore, that when a party knows or reasonably should know both that an injury has occurred and that it was wrongfully caused, the statute begins to run and the party is under an obligation to inquire further to determine whether an actionable wrong was committed." (Internal quotation marks omitted.)).   Plaintiff, however, did not do so. Accordingly, his cause of action is barred pursuant to section 13-205 of the Code.   735 ILCS 5/13-205 (West 2012).

¶ 50    We disagree with plaintiff's contention, and the circuit court's finding, that the statute of limitations did not begin to run until plaintiff attempted to lodge the assignments of beneficial interest in 2013.   The nature of a land trust agreement is that the trustee acts only when directed to do so by the beneficiary and for the benefit of the beneficiary.   *Podvinec*, 168 Ill. 2d at 137. Accordingly, the trustee in this matter did not accept the assignment based on the dispute

between the parties, as shown by Roseann Dupass's testimony. Plaintiff's theory of the case is that defendant assigned him the beneficial interests on February 16, 1994. Based on the assignments, plaintiff and defendant agreed that they would each have 50% of the beneficial interest in each trust. In a dispute regarding ownership rights of beneficial interest holders, the relevant parties are the beneficial interest holders, not the trustee who is merely a representative of the beneficiaries. See *Id.* ("Outside of relationships based on legal title, the trustee's title has little significance."). Therefore, the relevant parties to this dispute, plaintiff and defendant, were allegedly in agreement in regard to sharing the power of direction of the trusts since 1994. The 1994 assignment would then give the parties equal say in how to direct the trustee to act. It follows that plaintiff was put on notice in 2000, and then later in 2004 or 2005, that defendant was not sharing the power of direction when she entered into mortgages secured by the property. Plaintiff testified further that, in 2006, he "realized [he] was not in a good situation" because he had not lodged the assignments. A statute of limitations begins to run "when the party to be barred has the right to invoke the aid of the court to enforce his remedy." *Sundance Homes, Inc.,* 195 Ill. 2d at 266. Plaintiff could have filed a similar declaratory judgment action in 2000, or in 2004 or 2005, or even in 2006, to assert his ownership rights, but did not do so. As previously discussed, the appropriate statute of limitations is determined by the nature of the liability. *Travelers Casualty & Surety Co.*, 229 Ill. 2d at 469. In this matter, the nature of the liability is not that the trustee refused to accept the assignments. Rather, the nature of the liability is that defendant's actions are not consistent with the parties alleged 1994 agreement to each receive a 50% beneficial interest in the land trusts. That beneficial interest, in turn, would give plaintiff a 50% interest in the powers and ownership rights accorded to the beneficiary of an Illinois land trust.

¶ 51    In conclusion, we stress that we do not intend this decision to be interpreted as placing a time limitation for the lodging of assignments of beneficial interests in Illinois land trusts.   We hold that, under the facts of this case, and the nature of plaintiff's injury here, plaintiff knew, or should have known of his injury outside the statute of limitations provided for in section 13-205 of the Code.   735 ILCS 5/13-205 (West 2012).   The circuit court concluded that plaintiff had indeed met his burden of proof regarding his right to a 50% beneficial interest in the property, but the court's analysis could not end there.   The statute of limitations as applied to the facts had to be a factor in the court's analysis.   Furthermore, although the circuit court clearly believed that plaintiff had the better part of the argument and that defendant actively sought to take plaintiff's 50% beneficial interest unjustly, we must accept the facts as we find them. Specifically, in this case, regardless of the chicanery by defendant, plaintiff had many opportunities to meet the statutory obligations in order to protect his interest and yet he failed to do so within the time allowed by section 13-205 of the Code.   *Id.*   Indeed, defendant admits as much and put the circuit court on notice by filing an affirmative defense.   In short, the defendant's affirmative defense essentially says, even if plaintiff had the 50% beneficial interest that he claims, he has forfeited that interest.   Understandably, the circuit court found this unjust and sought to give plaintiff his rightful share.   Accordingly, defendant's affirmative defense presented sufficient evidence supporting our holding that plaintiff, knew, or at the very least should have known, of his injury outside of the statute of limitations.

¶ 52                                                      CONCLUSION

¶ 53    The judgment of the circuit court of Cook County is reversed, and the cause is remanded.

¶ 54    Reversed and remanded.

STEVEN TOUSHIN,

Plaintiff-Appellee,

v.

GINA RUGGIERO,

Defendant-Appellant,

(First Merit Bank, a National Banking Institution,
Trustee Under Trust Numbers 78-03-2431 and 88-03-5438,

Defendant)

No. 1-14-3151

Appellate Court of Illinois
First District, First Division

August 3, 2015

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

Appeal from the Circuit Court of Cook County.

The Honorable Mary L. Mikva, Judge Presiding.

Torshen, Slobig, Genden, Dragutinovich and Axel, Ltd., 105 West Adams Street, Suite 3200, Chicago, IL 60603, (Robert J. Slobig, of counsel), for APPELLANT.

Goldwater & Associates, 30 North La Salle Street, Suite 3200, Chicago, IL 60602, (Ben Goldwater, of counsel), for APPELLEE.