# Illinois Official Reports

## Appellate Court

> ### *Toushin v. First Merit Bank*, 2021 IL App (1st) 192171

| | |
|---|---|
| Appellate Court Caption | STEVEN TOUSHIN; FESTIVAL THEATER CORPORATION; and IMAGES OF THE WORLD, LTD., Plaintiffs-Appellees, v. FIRST MERIT BANK, Trustee Under Trust Numbers 78-03-2431 and 88-03-5438; GINA RUGGIERO; and ANGELO RUGGIERO, Defendants (Richard M. Ruggiero, Independent Executor of the Estate of Gina Ruggiero, and Michael Ruggiero, Independent Administrator of the Estate of Angelo Ruggiero, Defendants-Appellants). |
| District & No. | First District, Sixth Division<br>No. 1-19-2171 |
| Filed<br>Rehearing denied | June 25, 2021<br>July 29, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-10090; the Hon. Sanjay Tailor, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert J. Slobig, of Torshen, Slobig & Axel, Ltd., of Chicago, for appellant.<br><br>Ben Goldwater, of Goldwater & Associates, of Chicago, for appellees. |

JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Connors and Oden Johnson concurred in the judgment and opinion.

## OPINION

¶ 1      Defendants, Richard M. Ruggiero as independent executor of the estate of Gina Ruggiero[1] and Michael Ruggiero as independent administrator of the estate of Angelo Ruggiero, appeal the judgment of the circuit court entered in favor of plaintiffs, Steven Toushin, Festival Theater Corporation (Festival), and Images of the World, Ltd. (Images), on their unjust enrichment claim. On appeal, defendants contend that the judgment was error where (1) the court's determination was contrary to the law of the case and (2) plaintiffs' claims were barred by *res judicata* and the statute of limitations. Defendants also challenge the trial court's findings and argue for judgment in their favor or a new trial where (1) plaintiffs' unjust enrichment claims were invalid and their claim of fraud was unsupported by the evidence and (2) the trial court erred in not finding in favor of Gina on her counterclaims based on the written lease. For the following reasons, we affirm.

¶ 2      I. JURISDICTION

¶ 3      On February 5, 2019, the trial court entered its judgment granting plaintiffs relief. Defendants filed a posttrial motion, which the court denied on September 27, 2019. Defendants filed their notice of appeal on October 25, 2019. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered below.

¶ 4      II. BACKGROUND

¶ 5      Plaintiff Toushin filed his original complaint against Gina and First Merit Bank in April 2013, and this is the second appeal involving this matter between the parties. The dispute centers on the ownership of two properties located at 1349 and 1365 N. Wells Street in Chicago, Illinois. The amount of litigation between the parties has resulted in a number of court opinions that have ably set forth the facts in this case. We present those facts relevant to this appeal below.

¶ 6      Angelo Ruggiero, Gina's husband, began representing Toushin in the 1970s as his attorney in both personal and business matters. Significant here, Angelo represented Toushin in (1) a 1975 dispute with his business partners that resulted in Toushin acquiring the 1349 N. Wells Street property, (2) divorce proceedings with Toushin's first wife in 1983, and (3) criminal and civil proceedings with the Internal Revenue Service (IRS) that occurred around the same time as his divorce proceedings. Through their attorney-client relationship, Angelo and Toushin became friends. However, for reasons more fully explained below, the parties came to dispute the ownership of the 1349 N. Wells and 1365 N. Wells Street properties.

---

[1]Gina Ruggiero passed away while this appeal was pending, and her son, Richard M. Ruggiero, was substituted as a party in place of her estate.

¶ 7        At the 2014 trial, Toushin testified that on March 20, 1978, he acquired the 1349 N. Wells Street property by court order. Angelo, who represented Toushin in the matter, placed title to the property in a land trust at Midwest Bank and Trust Company with Toushin as the 100% beneficial owner of the trust. Plaintiff Festival operated its business from the premises. Toushin was the principal officer, director, and stockholder of Festival.

¶ 8        In 1983, Toushin was involved in divorce proceedings with his first wife, and he also received a number of subpoenas from the IRS. Angelo served as his legal advisor in both matters. According to Toushin, Angelo told him that he could protect his assets from his ex-wife and the IRS by transferring 50% of the beneficial interest in the land trust of 1349 N. Wells Street to Angelo. He assured Toushin that he would execute an undated assignment that would transfer the 50% beneficial interest back to Toushin when his assets were no longer at risk for seizure. Accordingly, on April 4, 1983, Toushin assigned 50% of the beneficial interest in the land trust holding title to 1349 N. Wells Street to Angelo. The next day, without Toushin's knowledge, Angelo transferred his 50% beneficial interest in the 1349 N. Wells Street land trust to Gina.

¶ 9        Toushin testified that he acquired the 1365 N. Wells Street property in 1984. He gave Angelo $10,000 to buy the property for him because he could not obtain a mortgage. Angelo agreed to help and purchased the property with Toushin's money on April 1, 1984. Title was taken by a land trust with the beneficial interest assigned to Angelo. According to Toushin, Angelo counseled that the 1365 N. Wells Street property should be in Angelo's name because Toushin was being investigated for tax fraud. In return, Angelo executed an undated assignment of the beneficial interest in the property to Toushin. An assignment transferring 50% of the interest in the 1365 N. Wells Street land trust to Toushin was entered into evidence. The document was signed by Angelo. Plaintiff Images operated its business at the premises. Toushin was the principal officer, director, and stockholder of Images.

¶ 10       Toushin eventually pleaded guilty to various tax charges, and he was incarcerated for 18 months. In 1987, Toushin was indicted on three counts of making false statements on his tax returns, and Angelo represented him in the criminal case. See *United States v. Toushin*, 899 F.2d 617 (7th Cir. 1990). He told Toushin that he faced a potential 45-year prison term. Angelo counseled him to use 1349 N. Wells Street to provide for his children if he was convicted and incarcerated. Based on this advice, Toushin transferred the remaining 50% beneficial interest in the 1349 N. Wells Street land trust to Gina on February 4, 1988, before his trial began. With this transfer, Gina held 100% of the beneficial interest in the 1349 N. Wells Street land trust. In return, Gina gave Toushin an undated but signed assignment of the 50% beneficial interest to file after the resolution of his legal issues. Toushin believed his interest in 1349 N. Wells Street was protected by the assignment.

¶ 11       In October 1988, a jury convicted Toushin of tax fraud, but his conviction was reversed on appeal due to faulty jury instructions. *Id.* at 621-26. Before the second trial, Toushin pled guilty to one count of filing a false tax return and was sentenced to time served. See *Toushin v. Commissioner*, 223 F.3d 642 (7th Cir. 2000). In 1992, the IRS instituted civil proceedings against Toushin to recover unpaid income taxes. A notice of tax deficiency and penalties was issued in the amount of $737,308. Angelo represented Toushin in those proceedings.

¶ 12       Toushin testified that on February 16, 1994, he met with defendants Angelo and Gina at their home, where they gave him an assignment of 50% beneficial interest in each of the land trusts. The assignments were signed by Gina but undated. Toushin, however, did not attempt

to lodge the assignments with the trustee. Angelo had told him that his assets were at risk for seizure through 2011, so Toushin could not lodge the assignments at that time. Toushin admitted that, based on Angelo's advice, he testified during his divorce proceedings that he did not have an interest in either trust.

¶ 13    On May 9, 2000, a mortgage foreclosure complaint was filed naming as defendants Angelo, Gina, Midwest Bank and Trust Company as trustee of the 1349 N. Wells Street and 1365 N. Wells Street land trusts, Toushin, Festival, Images, and unknown owners and nonrecord claimants. The amount of indebtedness secured by each mortgage was $724,000. The complaint alleged that Angelo and Toushin were personally liable for a deficiency because they signed the notes securing the mortgages. Sometime in 2004 or 2005, Toushin learned of a new mortgage obtained by defendants. He testified that he told defendants he was "annoyed. If you're going to take out a loan, why don't you come to me, why don't you talk to me."

¶ 14    In October 2012, Toushin listed the 1349 N. Wells Street property for sale with Angelo's knowledge and consent. Toushin presented defendants with a buyer and a signed sales contract for $1,160,000. He testified that, until that time, neither Angelo nor Gina disputed Toushin's 50% beneficial interest in the properties. At that point, however, Angelo ceased communications with Toushin and left the matter to his adult children. Defendants' children hired a new broker to sell 1349 N. Wells Street without Toushin's consent.

¶ 15    Toushin met with defendants' children in February 2013 to discuss how to divide the proceeds of the sale. At this meeting, Richard Ruggiero, an attorney, informed Toushin that the assignments were invalid. Toushin testified that this was his first indication that defendants would not honor the assignments. Angelo later spoke with Toushin and told him that he and Gina would not give Toushin any of the proceeds from the sale of 1349 N. Wells Street. When Toushin attempted to lodge the assignments in April 2013, defendants appeared and objected. The trustee, First Merit Bank, refused to accept the assignments because they were from 1994 and disputed.

¶ 16    On April 15, 2013, Toushin filed a complaint against Gina and First Merit Bank for declaratory and injunctive relief and to declare a constructive trust. The complaint sought a declaratory judgment that the two assignments he possessed gave him 50% of the beneficial interest in the land trusts holding title to 1349 and 1365 N. Wells Street. In the complaint, Toushin alleged that "[he] paid all the expenses in connection with the properties held in the said [t]rusts, including the debt service on the mortgage, real estate taxes, insurance and maintenance and/or improvements to the property." He alleged that "[f]or reasons best known to the individual parties *** the [a]ssignments were not submitted to the [t]rustee for acceptance until April 1, 2013."

¶ 17    Angelo testified at the 2014 trial that he represented Toushin, whom he described as both a friend and a client, in a 1975 dispute. As a result of a settlement, Toushin received property commonly known as 1349 N. Wells Street, $150,000 worth of film, and property in Indianapolis. Angelo placed the 1349 N. Wells Street property in a land trust with Toushin owning 100% of the beneficial interest. He testified that Toushin later assigned him half of the beneficial interest in the 1349 N. Wells Street property, half of the Indianapolis property, and half of $150,000 worth of film because he had no money to pay the legal fees owed to Angelo.

¶ 18    Angelo also testified that he bought the 1365 N. Wells Street property himself. He used money that his cousin, Angelo Esposito, gave him as a gift, but he could not recall how much he paid. He took title through a land trust formed in 1984. In 1988, Angelo formed a new land

trust and transferred the title of 1365 N. Wells Street to that trust. Gina was named the sole beneficiary. Angelo testified that, as a tenant, Toushin's lease provided that he pay all mortgages, taxes, and maintenance. He denied meeting with Toushin on February 16, 1994, and denied that he ever advised Toushin to conceal his ownership interest in the trusts.

¶ 19    Angelo admitted that, 10 years prior to trial, he had been suspended from the practice of law for 1 year. He further admitted that the signature on the assignment transferring 50% of the beneficial interest in the land trust holding 1365 N. Wells Street to Toushin appeared to be his. Angelo testified before a federal grand jury that, before Toushin transferred the first 50% interest in the 1349 N. Wells Street land trust to Angelo, he was paid $25,000 in attorney fees in the case. Angelo stated that Toushin transferred the remaining 50% beneficial interest in the 1349 N. Wells Street land trust to him in exchange for a credit of $30,000 in attorney fees owed to Angelo. Angelo presented no documents to support the amount of attorney fees Toushin owed for legal work he performed.

¶ 20    Gina testified that Toushin had been to her home five or six times and that he went to her daughter's wedding. When asked whether the signatures on the February 16, 1994, assignments were hers, she responded "I don't know. It looks like my signature, but, again, I don't know." Defendant could not remember if Toushin came to her home on February 16, 1994. She denied assigning any interest in the trusts to him, stating they were gifts from her husband that she would never give to Toushin.

¶ 21    Gina testified that she was not actively involved in the management of the buildings. She did not purchase the properties, nor did she pay money to anyone to acquire the beneficial interests in the land trusts holding legal title to the properties. She never paid mortgage payments, property taxes, insurance premiums, or maintenance expenses for the properties. She denied that the February 16, 1994, meeting occurred, and she could not remember if Toushin came to her home on that date.

¶ 22    Gina acknowledged that she and Angelo obtained personal loans and mortgaged the properties to secure repayment of the loans. Toushin paid the principal and interest on these loans. To make the payments, Toushin would deposit money into an account in Gina's name at North Bank, which held the mortgage. North Bank then took the mortgage payments from that account. Gina, however, was not aware that there was an account in her name at North Bank.

¶ 23    The trial court found Toushin to be a more credible than Gina or Angelo as to what occurred with the assignments of beneficial interest. Specifically, Toushin's testimony "matched better" with his documented divorce and tax litigation than the defendant's claims regarding legal fees. The court found Gina not credible as a witness. It noted that Gina's signature was on the assignments and that she did not dispute the validity of her signature. The court granted Toushin relief on his declaratory judgment claim, ruling that he may lodge the assignments of beneficial interest dated February 16, 1994, and that First Merit shall permit the lodging. Gina appealed pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), since Gina's counterclaim remained pending.

¶ 24    On appeal, this court reversed, finding that Toushin's declaratory judgment claim was time-barred pursuant to section 13-205 of the Code of Civil Procedure (Code) (735 ILCS 5/13-205 (West 2012)). See *Toushin v. Ruggiero*, 2015 IL App (1st) 143151, ¶ 49 (*Toushin I*). On remand, the trial court entered judgment awarding Gina possession of both properties as the

100% beneficiary of each trust. The court also ordered the possession order stayed for several months, conditioned upon Toushin's payment of $5000 per month.

¶ 25 On September 15, 2015, the trial court allowed Gina to supplement her counterclaim to add Festival and Images as additional counterdefendants. The court also granted plaintiffs leave to add Angelo as a defendant. Neither plaintiffs nor defendants objected to these filings.

¶ 26 Plaintiffs filed a second amended supplement to their complaint alleging three counts. Count I, brought by Festival, alleged overpayment on the 1349 N. Wells Street lease. Count II, brought by Images, alleged overpayment on the 1365 N. Wells Street lease. In count III, Toushin claimed unjust enrichment. Defendants filed a motion to dismiss, which the trial court denied except as to count III, to the extent that it "seeks unjust enrichment for payments made prior to the parties entering into written leases in 2008." The court also denied defendants' motion for summary judgment.

¶ 27 The trial court determined that the claims for overpayment in counts I and II were timely because they were based on a written lease that is governed by a 10-year statute of limitations. The unjust enrichment count, which alleged fraud, fell "within Plaintiffs' 'continuing injury' theory, which would also defeat the statute of limitations defense." The trial court further found that "[t]here was a second layer of fraud when Angelo provided affidavits and testified under oath at trial that" the written leases required plaintiffs to pay the mortgages. The court stated that "[t]his testimony under oath *** is not accurate. The leases were, in fact, double net leases, which did not require Plaintiffs to make any mortgage payments."

¶ 28 Defendants answered the complaint and filed a counterclaim. Relevant here, the counterclaim alleged that when Toushin and Images vacated the 1365 N. Wells Street property "[t]hey left the premises in a state of disrepair." They violated their duty to Gina, as beneficial owner of the property, "not to commit waste upon them." Gina also alleged breach of contract by Toushin based on the leases. Defendants further argued that Gina owned 100% of Festival.

¶ 29 A trial on plaintiffs' claim and defendants' counterclaim was conducted in August 2018. Angelo, however, had passed away before the second trial, and by order of the court his estate was substituted as a party. The parties stipulated that the trial record from the first trial would be admitted into evidence as part of the record in the second trial, and the trial court was not bound by the fact findings of the first trial except to the extent the law of the case doctrine applied. The court also heard testimony over four days on the claims and counterclaims.

¶ 30 In its 37-page order, the trial court thoroughly explained the grounds for its determination. The court found that "Angelo and Gina acquired Toushin's interests in 1349 and 1365 over a number of years while Angelo was in an attorney-client relationship with Toushin." Relying on Angelo's advice to protect his assets in his divorce proceedings and against the imposition of a federal tax lien, Toushin assigned 50% of the beneficial interest in the 1349 N. Wells Street land trust to Angelo who, without Toushin's knowledge, then assigned his beneficial interest to Gina. Before going to trial on his federal criminal case in 1988, Toushin assigned his remaining 50% interest to Gina, again based on Angelo's advice. Gina gave Toushin a signed but undated assignment of her 50% beneficial interest in the 1349 N. Wells Street land trust to lodge with the trustee when Toushin's legal issues were finally resolved. Angelo told Toushin that his interests would be protected by the assignment.

¶ 31 Regarding the 1365 N. Wells Street property, the court found credible the evidence establishing that Toushin purchased the property with a down payment of $10,000 and that he put title in Angelo's name because he was being investigated for tax fraud and no bank would

lend Toushin money. The court found that Angelo executed an undated assignment in favor of Toushin. It further found that Angelo acknowledged that the signature on the assignment transferring 50% of the beneficial interest in the 1365 N. Wells Street land trust appeared to belong to him.

¶ 32    The court found Toushin credible when he stated that he did not lodge the executed assignments with the land trustee before 2013 because he believed his ownership interest in the properties was protected.

¶ 33    The court did not find Angelo to be a credible witness in the 2014 trial. He offered no evidence to support his contention that Toushin assigned the beneficial interest in the 1349 N. Wells Street trust to Angelo as payment for attorney fees he owed. Angelo also offered no evidence to show that he, not Toushin, purchased the 1365 N. Wells Street property with a "gift" from his cousin. It further found that

> "Gina did not purchase the properties, did not pay Angelo any money for the properties, and did not otherwise pay any money to anybody to acquire the beneficial interests in the land trusts that held legal title to the properties. She never paid the mortgage, property taxes, insurance premiums, or maintenance expenses for the properties. She believed she may have visited the properties only once or twice. She did not have any role in managing the properties."

¶ 34    The trial court noted that in another court proceeding, *Resolution Trust Corp. v. Ruggiero*, 977 F.2d 309 (7th Cir. 1992), Angelo resisted a court judgment against him for default on a $200,000 promissory note. In that case, he argued that the 1349 and 1365 N. Wells Street properties belonged to Gina, not him. In its order, the district court found that Angelo's conduct "smacks of fraud. And given the fact that the bulk of Ruggieros' property has been placed in Gina's name and that according to Angelo's and her own testimony she has not engaged in income-productive activity, her conduct also flouts the Order and reflects complicity in that fraud." See *Resolution Trust Corp. v. Ruggiero*, No. 90-C-4054, 1992 WL 454913, at *3 (N.D. Ill. Mar. 5, 1993).

¶ 35    In October 2012, Toushin listed 1349 N. Wells Street for sale with the knowledge and consent of Angelo. After he found a buyer and obtained a sales contract for $1,160,000, defendants' adult children took over communications with Toushin. In 2013, they informed Toushin that the assignments were not valid. The court found that this "was the first indication Toushin received that the defendants would not honor their assignments."

¶ 36    The trial court determined that, "[a]lthough the evidence would likely sustain a fraudulent misrepresentation claim, Toushin's fraud theory is actually one of concealment." Furthermore,

> "because Angelo acquired his interests in 1349 and 1365 in the course of representing Toushin in various legal matters, Angelo owed Toushin a fiduciary obligation and, therefore, had the burden to establish that his acquisitions were entirely fair and equitable. Angelo failed to do so, making this a case of constructive fraud."

Angelo had a duty to disclose all material facts. "Toushin placed his trust and confidence in Angelo, giving Angelo significant influence over Toushin." Angelo, however, "stood mute. It was only in 2013, when Toushin presented Angelo with a buyer for 1349, that Angelo told Toushin that neither he nor Gina would honor their assignments and that they owned 100% of the beneficial interests in the 1349 and 1365 land trusts." The court concluded that

"Angelo preyed on the trust and confidence that Toushin reposed in him as his long-time lawyer to devise and implement a scheme to acquire 1349 and 1365 for himself and Gina, under the pretextual legal counsel that transferring the properties to him and Gina would protect Toushin's assets from the IRS and his former wife."

The trial court determined that plaintiffs' complaint was timely under the fraudulent concealment statute. See 735 ILCS 5/13-215 (West 2018).

¶ 37    The court found that Gina's counterclaims of waste and lack of standing were without merit. The court ruled that her counterclaim based on breach of lease failed because the leases were "a sham." "[T]he form leases were merely ruses devised by Angelo to defraud Toushin's creditors and to later defraud Toushin." It found that all claims based on the leases, including counts I and II of plaintiffs' complaint, failed for this reason.

¶ 38    As for damages, the court noted that the 1349 N. Wells Street property was sold in November 2015 for $2.26 million. It determined that Toushin was entitled to 50% of the sale proceeds, or $1,130,000 "as a measure of the defendants' unjust enrichment." As for the 1365 N. Wells Street property, Michael Ruggiero testified that it is listed for sale and he rejected an offer of $3.7 million. He believed the fair market value of the property was $4.2 million. 1365 N. Wells Street currently generates $22,000 a month in rental income. The court found that "Toushin is entitled to 50% of the fair market value of 1365, or $2.1 million, in damages on Count III for unjust enrichment."

¶ 39    The trial court further found that, between 2008 and 2015, Festival and Images each paid $308,115.14 in mortgage principal and interest payments on defendants' personal loans secured by the properties. Prior to 2008, plaintiffs collectively paid $2,610,982 in principal and interest towards defendants' personal loans. The court determined that "[a]ll payments made by the plaintiffs went toward the mortgage indebtedness on 1349 and 1365, not for rent under the leases." It reasoned that

"plaintiffs paid the mortgage, property taxes, property insurance premiums, maintenance and upkeep expenses, and of all the other expenses associated with 1349 and 1365. The defendants, on the other hand, paid none of the expense associated with home ownership. In fact, the defendants failed to show that they undertook any responsibility associated with the ownership of 1349 and 1365. The plaintiffs are entitled to damages on account of their payments of principal and interest on the defendants' mortgage indebtedness."

¶ 40    Therefore, the trial court awarded plaintiffs damages totaling $6,457,212.28. Toushin was awarded $3,230,000 in his unjust enrichment claim; Festival was awarded $1,613,606.14, representing the sum of one-half of the mortgage payments it made on the 1349 N. Wells Street property. Judgment was entered in favor of Images for $1,613,606.14, representing one-half of the mortgage payments it made on the 1365 N. Wells Street property. The trial court's order allowed plaintiffs leave to file an amended complaint to add Festival and Images to the unjust enrichment claim, which would "conform their pleadings to the evidence."

¶ 41    Defendants filed a posttrial motion to vacate the judgment and enter judgment in favor of defendants or, alternatively, to enter an order granting a new trial. The trial court denied the motion, and defendants filed this appeal.

¶ 42                                                  III. ANALYSIS

¶ 43                                               A. Law of the Case

¶ 44         On appeal, defendants first contend that the trial court's judgment was contrary to the law of the case established in the first appeal.

¶ 45         The law of the case mandates that "issues presented and disposed of in a prior appeal are binding and will control in the circuit court on remand, as well as the appellate court in a subsequent appeal, unless the facts presented are so different as to require a different interpretation." *Bilut v. Northwestern University*, 296 Ill. App. 3d 42, 47 (1998). This rule is based on the sound policy that, once an issue is litigated and decided, the matter should end and the determinations made of law or fact settle that question for all subsequent stages of the suit. *Continental Insurance Co. v. Skidmore, Owings & Merrill*, 271 Ill. App. 3d 692, 696-97 (1995). Thus, on remand, "a trial court is bound by the appellate court's determination of all questions decided and may act only in conformance with the appellate court's judgment." *Salkeld v. V.R. Business Brokers, Inc.*, 231 Ill. App. 3d 441, 445 (1992). Whether the trial court's determination contradicted this court's mandate is a question of law, which we review *de novo*. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 352 (2002).

¶ 46         Toushin's declaratory judgment claim, which was the subject of the first appeal, asked the court to "determine and adjudicate the rights and liabilities of the parties hereto with respect to the ownership interest of each party in and to the Trusts herein." He requested a declaration that the assignments executed by Gina on February 16, 1994, "are in full force and effect" and that they "fully vest a fifty (50%) percent interest in said Trusts to the Plaintiff, Steven Toushin."

¶ 47         In the first appeal, this court determined that Toushin failed to file his declaratory judgment claim within five years of discovering his cause of action, as required by section 13-205 of the Code. *Toushin I*, 2015 IL App (1st) 143151, ¶ 47. We found that he should have known as early as 2000 that Gina "was not sharing the power of direction when she entered into mortgages secured by the property." *Id.* ¶ 50. As such, Toushin "could have filed a similar declaratory judgment action" as early as 2000. *Id.* He filed his action in 2013. We thus held that Toushin's declaratory judgment claim was barred as untimely. *Id.* ¶ 51.

¶ 48         Defendants argue that this decision was binding on the trial court on remand. The court, however, "found for Toushin on the very claims [that] were time-barred." Defendants contend that, under the law of the case, the trial court's judgment cannot stand.

¶ 49         We disagree. For the law of the case to apply to a claim, "the specific issue must have previously been decided." (Internal quotation marks omitted.) *Garland v. Sybaris Clubs International, Inc.*, 2019 IL App (1st) 180682, ¶ 36. In *Toushin I*, this court found that Toushin's claim that he possessed a 50% ownership interest in the 1349 and 1365 N. Wells Street land trusts was time-barred. Thus, on remand, the law of the case doctrine prevented Toushin from reasserting his claim that he had an enforceable 50% ownership interest in the properties. See *Bilut*, 296 Ill. App. 3d at 47 (finding that, "absent substantially different facts, a party will not be allowed to reargue issues previously decided by the appellate court").

¶ 50         Plaintiffs on remand filed a supplement to their complaint, which was the basis for the judgment defendants challenge in this appeal. The supplemental complaint did not raise an ownership claim. Instead, it raised claims of unjust enrichment based on fraud. Therein, plaintiffs alleged that Angelo "devised a scheme" in which Toushin would transfer his

- 9 -

beneficial interests in the land trusts to defendants. Toushin "was led to believe" that he was considered the owner of the beneficial interest of the land trusts, notwithstanding the transfer. Through this scheme, defendants "lulled" Toushin into paying for capital improvements to the properties to his detriment. Furthermore, due to defendants' "deception and misrepresentation," Toushin made payments on defendants' personal loans, which they obtained by using the properties as collateral. Plaintiffs alleged unjust enrichment in that, when the properties are sold, "Defendants will reap the benefits of the full current value of the properties, having paid or invested no money nothing [*sic*] for them." Plaintiffs also sought damages for sums expended toward capital improvements and toward mortgage and interest payments.

¶ 51    The fraud issue was not decided by this court in *Toushin I*. As a result, the law of the case doctrine has no application here. See *Filipetto v. Village of Wilmette*, 254 Ill. App. 3d 461, 466 (1993) (finding that "matters concerning the merits of a controversy that were not decided by a first appellate opinion do not become the law of the case").

¶ 52              B. *Res Judicata*, Claim-Splitting, and Statute of Limitations

¶ 53    Defendants next argue that the trial court should have dismissed plaintiffs' supplemental complaint where Toushin's claims were (1) *res judicata*, (2) barred by the rule against claim-splitting, and (3) adjudicated in an earlier case.

¶ 54    "The doctrine of *res judicata* provides that 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action.' " (Emphasis in original.) *Housing Authority for La Salle County v. Young Men's Christian Ass'n of Ottawa*, 101 Ill. 2d 246, 251-52 (1984) (quoting *People v. Kidd*, 398 Ill. 405, 408 (1947)). *Res judicata* prohibits not only those matters that were actually litigated and resolved in the prior suit but also any matter that might have been offered to defeat or sustain those claims. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 336 (1996). The application of *res judicata* is an issue of law we review *de novo*. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 43.

¶ 55    *Res judicata* applies where (1) there was a final judgment on the merits by a court of competent jurisdiction, (2) there was an identity of cause of action, and (3) there was an identity of parties or their privies. *Rein*, 172 Ill. 2d at 335. The final judgment element is a " 'critical' component in showing the applicability of *res judicata*." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 22 (quoting *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41). A final judgment terminates the litigation and fixes absolutely the rights of the parties, leaving only enforcement of the judgment. *Id.* ¶ 24. An order that does not terminate the litigation between the parties, such as a dismissal with leave to amend, is not a final judgment. *Id.*

¶ 56    Defendants contend that the trial court erred in finding no final judgment on the merits. They argue that the trial court's October 14, 2014, order was a final judgment. In that order, the trial court entered a declaratory judgment in Toushin's favor on the merits of his claim. However, it expressly reserved ruling on Gina's counterclaims, and this court, after reversing the trial court's judgment, remanded the matter for further proceedings on the counterclaims. Clearly, the trial court's October 14, 2014, judgment did not terminate the litigation between the parties. "A judgment cannot bar a subsequent action unless it is a 'final' judgment." *Id.* ¶ 22. Therefore, *res judicata* does not apply here.

¶ 57 Defendants' claim-splitting contention fails for the same reason. The rule against claim-splitting prohibits a plaintiff from suing for part of a claim in one action and then filing suit for another part of the claim in another action. *Rein*, 172 Ill. 2d at 340. Instead, a plaintiff must assert all the grounds of recovery against the defendant that arise from a single cause of action in one lawsuit. *Green v. Northwest Community Hospital*, 401 Ill. App. 3d 152, 154 (2010). Underlying the rule is the policy that litigation should have an end and that harassment from unnecessary multiple lawsuits should be discouraged. *Rein*, 172 Ill. 2d at 340. Here, there was no end to the litigation with the trial court's October 14, 2014, order. Thus, plaintiffs' supplemental complaint was filed in the same proceedings, not in another action.

¶ 58 Additionally, courts have recognized that the rule against claim-splitting should be relaxed where the failure to bring the claim in an earlier proceeding was due to fraud or where it would be inequitable to apply the rule. *Id.* at 341. Section 26(1) of the Restatement (Second) of Judgments provides that the rule does not bar an independent claim if the case involves a continuing or recurrent wrong. *Id.*; see also Restatement (Second) of Judgments § 26(1) (1980). Toushin asserted both fraud and a continuing injury. For these reasons, the rule against claim-splitting is inapplicable.

¶ 59 Defendants also contend that a judgment in Toushin's divorce proceeding rendered Toushin's claim that he had an interest in the properties *res judicata*. According to defendants, in that proceeding the court found against the ex-wife's claim that Toushin had an interest in the 1349 and 1365 N. Wells Street properties. Defendants conclude that "[t]he cause of action was identical" to Toushin's claim here. However, as we discussed, Toushin did not claim in his supplemental complaint that he had a viable interest in the properties. His claims were based on unjust enrichment. We disagree with defendants' contention that Toushin relitigated his ownership claims in the second trial, contrary to the principles of *res judicata*.

¶ 60 Defendants further argue that plaintiffs' claims were barred by the five-year statute of limitations under section 13-205 of the Code (735 ILCS 5/13-205 (West 2018)) and the two-year statute of limitations and six-year statute of repose set forth in section 13-214.3 of the Code (*id.* § 13-214.3).

¶ 61 The trial court found that "[t]he circumstances of this case are extraordinary" and noted that statutes of limitations do not necessarily control in suits seeking equitable relief. It reasoned:

> "Angelo and Gina repeatedly assured Toushin that his 50% interest in 1349 and 1365 would be protected by the numerous assignments that Angelo and Gina executed and gave Toushin. Yet the defendants concealed from Toushin for several decades their scheme to disavow the assignments and keep 1349 and 1365 for themselves. Under the guise of counseling Toushin on how to protect his assets from his former wife and the IRS, Angelo schemed to benefit himself and Gina at the expense of Toushin. Further, while Angelo and Gina stood mute, Toushin, in order to protect the properties from foreclosure, paid the principal and interest on Angelo and Gina's personal loans that they secured with a mortgage on 1346 and 1365. If there was ever [a] case where equity must step in to allow a plaintiff to recover against a defendant notwithstanding a statutory limitations or repose bar, this is it."

¶ 62 The court found that, even if limitations and repose periods applied, plaintiffs' complaint was timely under the fraudulent concealment doctrine. Fraudulent concealment will toll the statute of limitations "if a plaintiff pleads and proves that fraud prevented discovery of a cause

of action, and if so, a plaintiff can commence his or her suit at any time within five years after he or she discovers a cause of action." *Brummel v. Grossman*, 2018 IL App (1st) 162540, ¶ 37. Relevant here, for the doctrine to apply, plaintiffs must show affirmative acts or representations by a fiduciary calculated to prevent them from discovering their claim. *Id.*

¶ 63    As his attorney, Angelo had a fiduciary relationship with Toushin. *In re Winthrop*, 219 Ill. 2d 526, 543 (2006). "[T]hose who utilize legal services place a great deal of trust in their attorneys; consequently, the attorney-client relationship presents a significant potential for abuse." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 78 (2006). Angelo not only devised the plan for Toushin to assign his interests to him and Gina, he reassured Toushin that his interests would be protected by promising to transfer the interests back to Toushin when his assets were no longer at risk. Toushin reasonably relied on Angelo's assurances and assigned the beneficial interests to defendants.

¶ 64    We agree with the trial court that Toushin could not discover his cause of action earlier. Until 2013, he had no reason to believe defendants would deny his ownership interest in the properties altogether. Angelo's conduct and promises to transfer the interests to Toushin lulled him into believing he was the owner of the properties. In 2012, Toushin continued to believe that he had ownership interests in the properties as shown by his decision to list 1349 N. Wells Street for sale. Defendants did not challenge his ability to do so and even gave him their approval. Toushin did not discover their fraud until 2013, after he presented defendants with a buyer for 1349 N. Wells Street. At that time, he learned that Angelo and Gina claimed 100% interest in both properties and viewed the assignments to him as invalid. In light of defendants' conduct and assurances, Toushin had no reason to believe an investigation into possible fraud by defendants was necessary before 2013. See *id.* at 81. The statute of limitations may be tolled if a party establishes that fraud prevented the discovery of the cause of action. *Hagney v. Lopeman*, 147 Ill. 2d 458, 462 (1992). We find no error in the trial court's determination.

¶ 65                  C. Challenges to Plaintiffs' Complaint and Unjust Enrichment Claims

¶ 66    Defendants argue that the unjust enrichment claims were contrary to the law where the parties' relationship was subject to a written lease. They also contend that "[a] landlord is generally under no obligation to reimburse a tenant for improvements made to the leased property during the term of the lease" and that plaintiffs "voluntarily paid Gina, their landlord, payments they owed under the leases." As a result, plaintiffs cannot recover those monies.

¶ 67    These contentions, however, are based on the leases the parties executed for the 1349 and 1365 N. Wells Street properties. The trial court found that "the form leases were merely ruses devised by Angelo to defraud Toushin's creditors and to later defraud Toushin." It is the general rule that courts will not enforce a private agreement that is contrary to public policy. *Rome v. Upton*, 271 Ill. App. 3d 517, 519-20 (1995). "Public policy is the legal principle that no one may lawfully do that which has a tendency to injure the public welfare." *Id.* Our public policy is reflected in our constitution, statutes, and judicial decisions. *Id.* "If the question that an agreement is void as against public policy is not raised by a party to an action it is not only proper but necessary that the court *sua sponte* interpose the defense." *First Trust & Savings Bank of Kankakee v. Powers*, 393 Ill. 97, 104 (1946).

¶ 68    Where the parties knowingly entered into the contract in order to hide assets and defraud creditors, the contract is clearly against public policy. Therefore, we agree with the trial court that all contentions based on the fraudulent leases fail for this reason.

¶ 69    Defendants also contend that the affirmative defense of unclean hands should have defeated plaintiffs' unjust enrichment claims. They argue that Toushin disclaimed interest in the properties in order to evade the IRS and hide assets from his ex-wife and that he should not be rewarded for his misconduct.

¶ 70    Unclean hands "is an equitable doctrine that bars relief when the party seeking that relief is guilty of misconduct in connection with the subject matter of the litigation." *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 60 (2009). However, the doctrine applies where the party seeking equitable relief engaged in "misconduct, fraud, or [acted in] bad faith *toward the party against whom relief is sought*." (Emphasis added.) *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006). Defendants do not claim that Toushin's misconduct was aimed at them. In fact, Angelo counseled Toushin in the matter, and Toushin acted on Angelo's advice. We agree with the trial court that unclean hands is not available as an affirmative defense here.

¶ 71    Defendants raise for the first time on appeal the affirmative defense of the statute of frauds. The rule is well settled that the statute of frauds defense must be specially pleaded and cannot be raised for the first time on appeal. *Harvey v. McKinney*, 221 Ill. App. 3d 140, 142 (1991). Failure to specifically plead the statute of frauds forfeits the defense, "and it cannot be considered even if the evidence suggests the existence of the defense." *Id.* Therefore, we decline to consider this contention.

¶ 72    Defendants next contend that the trial court erred in granting plaintiffs leave to amend their complaint after the 2014 trial. Without providing much detail, they argue that the "amended pleadings did nothing to cure the defects of [plaintiffs'] original complaint, as shown above in Part II of this brief." Defendants raised 10 claims of error in part II of their brief, including the assertions we have already found to be without merit. Their argument on this issue, however, comprised only two pages of their brief and cited one case for authority.

¶ 73    This court is not a depository into which a party may dump the burden of argument and research. *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56. "A court of review is entitled to have the issues clearly defined and to be cited *pertinent* authority. A point not argued or supported by citation to relevant authority fails to satisfy the requirements of Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013)." (Emphasis in original.) *Id.* Failure to comply with the Rule 341(h)(7)'s requirements results in forfeiture of the issue on appeal. *Vancura v. Katris*, 238 Ill. 2d 352, 369-70 (2010).

¶ 74    Defendants' argument that Toushin waived his damages claim at the 2014 trial fails for the same reason. Defendants include quotes from the record with little explanation and cite one case for the general statement of law that waiver is the intentional relinquishment of a known right. "Citations to authority that set forth only general propositions of law and do not address the issues presented do not constitute relevant authority for purposes of Rule 341(h)(7)." *Robinson v. Point One Toyota, Evanston*, 2012 IL App (1st) 111889, ¶ 54.

¶ 75    Defendants also disagree with the trial court's denial of their motion for summary judgment. However, as our supreme court found in *In re Estate of Funk*, 221 Ill. 2d 30, 85 (2006):

> "Ordinarily, the denial of summary judgment is not appealable. That is because orders denying summary judgment are interlocutory in nature. An exception to this rule has been recognized where cross-motions for summary judgment have been filed on the same claim and one party's motion is granted while the opposing motion is denied, thereby disposing of all issues in the case."

- 13 -

Here, no cross-motions for summary judgment were filed, and the matter proceeded to trial. After trial, the court entered judgment in favor of plaintiffs. Thus, "[a]ny error thereupon merged into the final judgment rendered by the court." *Id.* It is that judgment, not the denial of defendants' summary judgment motion, that this court considers on appeal. *Id.*

¶ 76 Finally, defendants challenge the trial court's consideration of plaintiffs' unjust enrichment claims for payments made more than five years before Toushin filed suit in 2013. Defendants point to the trial court's 2016 ruling denying their motion to dismiss, in which the court found that the unjust enrichment claim, "to the extent Plaintiffs seek overpayments under an oral lease or arrangement *** that was in place prior to 2008," was outside the applicable five-year statute of limitations. Defendants contend that plaintiffs and the trial court in 2018 "utterly ignored" the 2016 ruling by considering evidence supporting unjust enrichment that occurred before 2008.

¶ 77 In making this argument, defendants cite no authority in support, in violation of Rule 341(h)(7). Nonetheless, the trial court's 2016 ruling was not binding on the parties or the court. The denial of a motion to dismiss is not itself a final determination or adjudication of the case. *Catlett v. Novak*, 116 Ill. 2d 63, 68 (1987). Rather, it is interlocutory in nature, and as such, the order can be reviewed, modified, or vacated at any time before final judgment. *Id.*

¶ 78                                              D. Trial Errors

¶ 79 Defendants contend that the trial court decided the case based on fraud and conspiracy when those claims were never pleaded in plaintiffs' complaint. Defendants argue that the court improperly went beyond the unjust enrichment claims asserted in the pleadings "to conjure up a case of fraud and conspiracy, based on theories" not pleaded or argued.

¶ 80 To state a cause of action based on unjust enrichment, plaintiffs "must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). Unjust enrichment "is not a separate cause of action that, standing alone, would justify an action for recovery." *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 631 (2008). Rather, it is a condition resulting from improper conduct " 'such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct.' " *Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill. App. 3d 483, 492 (1995) (quoting *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill. App. 3d 84, 90-91 (1985)). Therefore, addressing fraud in an unjust enrichment claim does not necessarily go beyond the pleadings.

¶ 81 To establish a *prima facie* case for fraudulent breach of fiduciary duty, a claim which sounds in fraud, a plaintiff is required to show that (1) the defendant made a false statement of material fact, (2) the defendant knew the statement to be untrue, (3) the plaintiff had the right to rely on the statement, (4) the plaintiff did rely on the statement, and (5) an injury resulted. *Hatchett v. W2X, Inc.*, 2013 IL App (1st) 121758, ¶ 62. A fiduciary's promises may be actionable as fraud if " 'the false promise or representation of future conduct is alleged to be the scheme employed to accomplish the fraud.' " *HPI Health Care Services*, 131 Ill. 2d at 168 (quoting *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 334 (1977)).

¶ 82 Plaintiffs' supplemental complaint alleged that, in 1983, Toushin "was involved in a bitter matrimonial action with his first wife" and "was experiencing problems with the" IRS. On

- 14 -

April 4, 1983, his attorney, Angelo, "devised a scheme" where Toushin would transfer 50% of his beneficial interest in the 1349 N. Wells Street land trust to Angelo to protect the property in the event Toushin was incarcerated. Angelo could then sell the property to benefit Toushin's children. The next day, Angelo transferred his 50% beneficial interest to Gina.

¶ 83    On February 4, 1988, Angelo "us[ed] the same threat of potential lengthy incarceration" to cause Toushin to assign the remaining 50% beneficial interest to Gina. As a result, Gina "became the 100% beneficial owner of" the 1349 N. Wells Street land trust, "without either she or her husband, Angelo, having paid any money whatsoever for said property." Defendants, however, promised Toushin they would eventually transfer the interests to him, and by doing so, Toushin was led to believe that he was "the owner of the beneficial interest in said property."

¶ 84    The complaint further alleged that, in 1984, Toushin purchased the 1365 N. Wells Street property. On the advice of Angelo, title of the property was taken by an assignment of beneficial interest in the 1365 N. Wells Street land trust to Angelo. Angelo so advised Toushin "on the pretext that the property would be safe from the IRS and from Toushin's ex-wife." Angelo then transferred the beneficial interest in the 1365 N. Wells Street land trust to Gina. "At all time material hereto, [Toushin] was led to believe by the Ruggerios, that he was, and he considered himself to be, the owner of the beneficial interest in said property."

¶ 85    The complaint stated that defendants "continued in their chicanery and thus lulled the Plaintiffs into paying for the capital improvements and the mortgage *** to their detriment and damage." Defendants led Toushin to believe he was the owner of the beneficial interest in the land trusts "by their deception and misrepresentation." As a result of their deception, "[d]efendants have been unjustly enriched by "the full current value of the properties, *** the capital improvements to the properties, the repayment of their loans and the tax benefits they derived from their interest in said properties."

¶ 86    We can glean from plaintiffs' pleadings that they alleged Angelo's fraud as the misconduct underlying their unjust enrichment claims. We find no error in the trial court's decision to address whether Angelo engaged in fraud when he acquired the beneficial interests in the 1349 and 1365 land trusts.

¶ 87    Defendants next contend that the trial court's finding of unjust enrichment was based on improper evidence. The admission of evidence is within the sound discretion of the trial court, and a reviewing court will not reverse the trial court absent a clear abuse of that discretion. *Gill v. Foster*, 157 Ill. 2d 304, 312-13 (1993). Even if a trial court abuses its discretion in the admission of evidence, a new trial will be ordered only if the trial court's ruling caused substantial prejudice affecting the outcome of the trial. *Dobbs v. Wiggins*, 401 Ill. App. 3d 367, 381 (2010). Moreover, in a bench trial there is a strong presumption that the trier of fact relied only upon proper evidence in reaching its decision on the merits. *Id.*

¶ 88    Defendants first argue that the trial court improperly denied defendants' motion to bar evidence of conversations and transactions with Angelo under the Dead-Man's Act (735 ILCS 5/8-201 (West 2018)). Defendants provide a citation of the statute but otherwise set forth no elements or law pertaining to the Dead-Man's Act. Defendants also provide little analysis of the facts as they relate to the law, in violation of Rule 341(h)(7).

¶ 89    The objective of the Dead-Man's Act is fairness. *Vazirzadeh v. Kaminski*, 157 Ill. App. 3d 638, 645 (1987). As such, "[o]nly unwitnessed conversations with the decedent are off limits." *Id.* Angelo testified under oath in the 2014 trial, and there is a record of his testimony regarding

his interactions with Toushin. The parties stipulated that the record from the 2014 trial was admissible in the 2018 trial. Defendants make no distinction between conversations Angelo testified about that are properly in the record and those that took place without witnesses, which may be subject to the Dead-Man's Act. We therefore find no merit in defendants' argument.

¶ 90    Defendants also challenge the trial court's finding that Toushin owned the 1349 and 1365 N. Wells Street properties but that he was divested of his interests through Angelo's fraud. In coming to that determination, the trial court found Toushin to be a credible witness and found Angelo and Gina not credible. Defendants argue that the trial court did not have the benefit of live testimony from either Angelo or Gina at the 2018 trial but instead read transcripts from the 2014 trial. They contend that the trial court's negative assessment of their credibility was "unfounded" and "failed to take into account the fact that each of them was of advanced age and in fragile health" at the 2014 trial.

¶ 91    Where the evidence before a trial court consists of depositions, transcripts, or other documentary evidence, a reviewing court is not bound by the trial court's findings. *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). The trial court, however, was well aware of Angelo's and Gina's age and the fact that some of the events took place many years ago. Its 37-page opinion thoroughly set forth the court's findings and the evidence on which they were based, as detailed above. We see no reason to disturb the trial court's findings as to the credibility of Angelo and Gina.

¶ 92    Defendants also disagree with the trial court's finding that Toushin was a credible witness. They argue that he had conceded he once swore under oath that he did not own the properties. Furthermore, when defense counsel tried to establish that Toushin had misled the IRS about his interest in the properties, the trial court "shut down the line of questioning."

¶ 93    In the 2018 trial, the trial court had the opportunity to observe Toushin testify. In a bench trial, the trial court has the superior vantage point from which to observe and judge a witness's demeanor and credibility. *Flynn v. Maschmeyer*, 2020 IL App (1st) 190784, ¶ 70. Thus, a reviewing court will defer to the trial court's factual findings unless they are against the manifest weight of the evidence. *Id.* A finding is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the finding is unreasonable, arbitrary, or not based on the evidence. *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002).

¶ 94    The trial court acknowledged that Toushin had disclaimed interest in the properties in other proceedings but found he did so on the advice of Angelo. In finding Toushin a more credible witness, the trial court reasoned that "[t]he timing of Toushin's transfers of his beneficial interests in 1349—in 1983 and 1988—is more consistent with Toushin's testimony that Angelo counseled him to do so in order to protect his assets from his wife and the IRS." In contrast, the trial court found Angelo's testimony at the 2014 trial not credible. He testified that Toushin transferred the beneficial interest in the 1349 N. Wells Street property to him because he had no money to pay Angelo his legal fees. The trial court pointed out that Angelo offered no evidence to document the amount of legal fees owed or to identify the legal work he performed for Toushin. Regarding 1365 N. Wells Street, the court found that Angelo's explanation that his cousin gave him a gift to purchase the property was "not credible. Angelo did not offer any other evidence of Esposito's gift to him."

¶ 95    In finding fraud, the trial court determined that, as Toushin's attorney, Angelo "preyed on the trust and confidence that Toushin reposed in him *** to devise and implement a scheme to acquire 1349 and 1365 for himself and Gina, under the pretextual legal counsel that transferring

- 16 -

the properties to him and Gina would protect Toushin's assets from the IRS and his former wife." Angelo concealed the fact that defendants would not honor the assignments they conveyed back to Toushin. Angelo also reassured Toushin that his interests would be protected by promising to transfer the interests back to Toushin when his assets were no longer at risk. In reliance on defendants' false promises, Toushin paid the principal and interest on their personal loans, and defendants acquired their beneficial interests in the land trusts "without paying anything."

¶ 96    We do not find the trial court's determinations unreasonable, arbitrary, or not based on the evidence.

¶ 97                                    E. Damages

¶ 98    Defendants dispute the award against Gina, contending that the trial court improperly found a conspiracy between Angelo and Gina. They allege that there was no evidence she knew about Angelo's scheme or participated in the fraud. They argue that the award against her is essentially relief based solely on the fact she was married to Angelo.

¶ 99    We disagree. "A cause of action based on unjust enrichment *** does not require fault on the part of the defendant." *Partipilo v. Hallman*, 156 Ill. App. 3d 806, 810 (1987). Rather, the "essence" of an unjust enrichment claim "is that one party is enriched and it would be unjust for that party to retain the enrichment." *Id.* The trial court found that Gina received a benefit by acquiring beneficial interests in the properties without paying anything for them and by having the mortgage and interest paid on the loans she and Angelo obtained using their beneficial interests as collateral. Her "innocence in receiving the benefit does not mean that [her] retention of that benefit without payment is just." *Id.* at 811.

¶ 100    Defendants also contend that awarding plaintiffs half of the properties' fair market value, as well as restitution for payments made toward the mortgage and interest payments, resulted in an unlawful double recovery. The trial court determined that "[d]efendants have been unjustly enriched by "the full current value of the properties, *** the capital improvements to the properties, the repayment of their loans and the tax benefits they derived from their interest in said properties." As for damages, the court noted that the 1349 N. Wells Street property was sold in November 2015 for $2.26 million. Thus, Toushin was entitled to 50% of the sale proceeds, or $1,130,000. As for the 1365 N. Wells Street property, Michael Ruggiero testified that he believed the fair market value of the property was $4.2 million. The court found that "Toushin is entitled to 50% of the fair market value of 1365, or $2.1 million, in damages on Count III for unjust enrichment."

¶ 101    The trial court further found that between 2008 and 2015, Festival and Images each paid $308,115.14 in mortgage principal and interest payments on defendants' personal loans secured by the properties. Prior to 2008, plaintiffs collectively paid $2,610,982 in principal and interest toward defendants' personal loans. The court determined that "[a]ll payments made by the plaintiffs went toward the mortgage indebtedness on 1349 and 1365, not for rent under the leases." As such, plaintiffs were entitled to damages on account of their payments of principal and interest on the defendants' mortgage indebtedness.

¶ 102    We find no double recovery here. In an unjust enrichment claim, restitution is a form of damages measured by the defendant's gain. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 257-58 (2004). An award of restitution is designed to prevent unjust enrichment by ordering defendants to disgorge the benefit conferred upon them by their actions toward

Toushin. See *MC Baldwin Financial Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill. App. 3d 6, 14 (2006). Restitution can be measured by the reasonable value of the benefits defendants unjustly received. *Id.* By defrauding Toushin of his 50% beneficial interest in the properties, defendants were enriched by his 50% of the fair market value of those properties. In addition, defendants caused Toushin to pay the mortgage and interest on the personal loans they obtained using the properties as collateral, while they paid nothing. As such, they also received a benefit measured by the payments Toushin made. The trial court's damages award was not error.

¶ 103                                F. Gina's Counterclaims

¶ 104        Defendants' final contention is that the trial court erred in failing to find for Gina on her counterclaims. On appeal, defendants' contention centers on her counterclaims for breach of the lease and waste on the properties. As we found above, the leases executed by the parties were fraudulent and therefore unenforceable as against public policy. Thus, any claim based on the leases are without merit. Furthermore, the issue is forfeited as a violation of Rule 341(h)(7) because defendants' breach-of-lease argument contains no citation of authority.

¶ 105        The waste argument likewise is without merit. Defendants claimed that Toushin left 1349 N. Wells Street "a shambles" and that remodeling work on 1365 N. Wells Street "was left unfinished or was poorly done." The trial court, however, found that the corporate plaintiffs

> "did not commit any waste. Rather, they occupied the properties for 30 years and what the defendants complain of was essentially normal wear and tear of buildings that were well over 100 years old. In any event, the damages that the defendants claim consist largely of the substantial expense they incurred to perform a complete renovation of 1365 and create modern apartments where none existed before."

This is merely an effort by defendants to reargue the facts before this court. It is well established that a reviewing court may not simply reweigh the evidence and substitute its judgment for that of the factfinder. *Snelson v. Kamm*, 204 Ill. 2d 1, 35 (2003). We will not disturb a trial court's findings of fact unless the opposite conclusion is apparent, or when the findings are arbitrary, unreasonable, or not based on the evidence. *Southwest Bank of St. Louis v. Poulokefalos*, 401 Ill. App. 3d 884, 890 (2010). We see no reason to overturn the trial court's determination here.

¶ 106                                G. Plaintiffs' Cross-Appeal

¶ 107        In their cross-appeal, plaintiffs contend that the trial court's finding that Toushin had a 50% interest in Festival was against the manifest weight of the evidence. In the trial proceedings, defendants contended that Gina owned 100% of Festival. The trial court found that the claim was "belied by the assignments that Gina signed granting a 50% interest in Festival to Toushin." It further found that Gina's son, Michael Ruggiero, "caused Festival to be reinstated in 2016 in order to remove Toushin from his position as an officer of Festival and, thereby, undermine his ability to pursue a claim on behalf of Festival." Ruggiero, who held Gina's power of attorney, did so in the "never-ending quest to defraud Toushin." The court concluded that "Toushin and the defendants each have a 50% equity interest in Festival."

¶ 108        Plaintiffs filed a motion to reconsider on this issue. They argued that the evidence showed two assignments of 50% interest in Festival to Toushin from Gina, which equal 100% of the interest in Festival. Defendants disagreed, arguing that plaintiffs' motion did not "address the

evidence and admissions [submitted by defendants] that Toushin has no ownership" in Festival.

¶ 109 The trial court denied the motion to reconsider after hearing argument, "having considered the parties' written and oral submissions and being otherwise fully advised." The court's written order stated nothing about the reasoning behind its ruling, nor do we find in the record a transcript of the hearing on the motion. With no record of those proceedings before this court, and the trial court's order stating that it heard the evidence and arguments of counsel being fully advised in the premises, we presume that the trial court's determination was based on sufficient evidence. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 394 (1984).

¶ 110 Furthermore, plaintiffs' motion to reconsider essentially requested a "second bite of the apple." See *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838 (2002). Thus, the trial court's determination on whether it should reconsider its prior decision was subject to its discretion. *Id.* Where "a motion for reconsideration requests the court to change its mind about its factual findings, we will find no abuse of discretion *** unless the court's revised factual findings, or the factual findings to which it decided to adhere, are against the manifest weight of the evidence." *Shulte v. Flowers*, 2013 IL App (4th) 120132, ¶ 22. A determination is against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008).

¶ 111 We do not find the opposite conclusion clearly evident. Both sides presented documentary and testimonial evidence at trial supporting their claims that they owned interest in Festival. The trial court's task was to weigh that evidence and make determinations thereon. As a reviewing court, we may not reweigh the evidence and substitute our judgment for that of the trial court. *Steed v. Rezin Orthopedics & Sports Medicine, S.C.*, 2021 IL 125150, ¶¶ 44-46. "If the record contains any evidence to support the trial court's judgment, the judgment should be affirmed." *In re Estate of Wilson*, 238 Ill. 2d 519, 570 (2010).

¶ 112                                    IV. CONCLUSION
¶ 113 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 114 Affirmed.